UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00194-GNS-LLK

BETTY J. SCOTT                                                          PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR                                                DEFENDANT

## MEMORANDUM OPINION & ORDER

Plaintiff Betty J. Scott ("Scott") brings this action for review of the Department of Labor's ("DOL") denial of her claims for survivor benefits under Parts B and E of the Energy Employee Occupational Illness Compensation Program Act of 2000 ("EEOICPA" or "Act"), 42 U.S.C. §§ 7384 to 7385s-16. For the reasons stated below, Scott's claim is **DENIED**.

## I.     STATEMENT OF FACTS AND CLAIMS

Scott's husband, Warren E. Scott, worked at the Paducah Gaseous Diffusion Plant ("PGDP") from February 3, 1953 to December 31, 1994. (Administrative R. 12, DN 20-1 [hereinafter AR]). In the Complaint, Scott alleges that her husband was exposed to hazardous substances during his time at the PGDP, which caused various illnesses. (Compl. ¶ 9, DN 1). Scott's husband passed away on September 28, 2007. (AR 12).

Scott first sought compensation for survivor benefits under EEOICPA Part E in January 2008. (AR 555-558). She alleged that her husband's chronic obstructive pulmonary disease ("COPD") was the result of his employment at the PGDP and that COPD caused his death. (AR 555-558). In April 2008, the district office of DOL's Office of Workers' Compensation

1

Programs ("OWCP") recommended that Scott's claim be denied.  (AR 504-507).  In July 2008, the Final Adjudication Branch ("FAB") within OWCP issued a final decision consistent with the district office's recommendation.  (AR 490-493).

Subsequently, in April 2012, Scott filed claims for survivor benefits under EEOICPA Part B and E for her late husband's alleged chronic beryllium disease ("CBD") and for his death, allegedly due to CBD. (AR 470-471).  After a hearing, FAB issued a final decision denying Scott's claims in April 2013.  (AR 288-291).  In May 2013, Scott submitted a timely request for reconsideration of FAB's decision in which she mainly disputed conclusions drawn from her husband's chest x-rays.  (AR 253-282).  FAB denied Scott's request because she did not present any new evidence or argument in support of her CBD claim.  (AR 246-247).  In August 2013, however, Scott requested that both her Part B and Part E claim be reopened.  (AR 217-242). That request was granted by order of the Unit Chief for Policies, Regulations, and Procedures within OWCP's Division of Energy Employees Occupational Illness Compensation and, as a result, FAB's April 2013 decision was vacated.  (AR 205-211).

The order instructed the district office to refer the x-ray reports submitted by Scott to a medical consultant for an opinion regarding "whether the findings are characteristic of CBD" and to issue a new recommended decision on Scott's claims under Part B and E.  (AR 211).  The consultant retained by the district office concluded that the x-ray reports did not show characteristics consistent with CBD.  (AR 199).  The consultant's report specifically provided:

> Question: Do the [x] -ray and CT reports submitted show characteristics consistent with [CBD]?
>
> Answer: No.
>
> The DEEOIC guidelines are quite specific with regard to the chest x-ray characteristics of CBD. The primary finding is small round and/or irregular areas of opacity distributed throughout all of the lung fields, which Mr. Scott's x-rays

do not display. Linear fibrosis is sometimes found with advanced CBD which results in progressive loss of lung volume. The fibrosis can be accompanied by honeycombing and upper lobe retraction.

Mr. Scott's chest x-rays are normal, except for some calcifications, up until 1991, when he starts to show hyperinflation compatible with COPD. At about the same time, there is the first mention of fibrotic change. This is reported on 8/8/91, 8/9/94 (called scarring in this report), and 9/30/98. The term "mild interstitial prominence" is used in the report from 10/19/98. However, the reports dated 9/15/98, 11/8/99, and 11/14/00 make no mention of fibrosis, scarring or interstitial lung disease. This implies that the fibrosis was not very impressive and certainly not progressive. There is certainly no mention of honeycombing or upper lobe retraction. It was also never accompanied or preceded by the small nodular opacities that almost always characterize CBD.

(AR 189).

Following the medical consultant's advice, a recommended decision was issued denying Scott's claims.  (AR 179-181).  After another hearing, in September 2014, FAB issued a final decision denying Scott's claims.  (AR 8-15).  No requests to reconsider or reopen were made. The current lawsuit followed in October 2014.  Scott requests review of only the September 2014 FAB decision denying her claims for CBD under Part B and E.  (Compl. ¶¶ 17-26).

## II.    JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 because federal questions under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, and 42 U.S.C. § 7385s-6(a) are presented.

## III.    DISCUSSION

### A.    Part B Claims

#### 1.    *Standard of Review*

Because the EEOICPA is silent on the procedures used in adjudicating claims for compensation, this Court and others have employed the APA's "arbitrary or capricious" standard

when reviewing DOL's final decisions denying claims for compensation under Part B.  *Freeman v. Dep't of Labor*, No. 5:14-CV-114-GNS-LLK, 2015 WL 5020697, at *2 (W.D. Ky. Aug. 24, 2015), *aff'd*, 653 F. App'x 405 (6th Cir. 2016); *Yatsko v. U.S. Dep't of Labor*, 439 F. App'x 122, 124 (3d Cir. 2011); *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379-80 (5th Cir. 2008). Under the APA's arbitrary or capricious standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).

Review under this standard is deferential.  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007).  Those contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations."  *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 475 (6th Cir. 2004) (internal quotation marks omitted) (citation omitted). "If there is any evidence to support the agency's decision, the decision is not arbitrary or capricious."  *Id.* Moreover, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (internal quotation marks omitted) (citation omitted).

### 2.      *DOL's Decision was neither Arbitrary nor Capricious*

To establish a diagnosis of CBD resulting from the employee's work-related beryllium exposure, certain statutory criteria must be met depending upon whether the claimed diagnosis was prior to or on and after January 1, 1993:

(B) For diagnoses before January 1, 1993, the presence of—

(i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and

(ii) any three of the following criteria:
>  (I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
>  (II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
>  (III) Lung pathology consistent with [CBD].
>  (IV) Clinical course consistent with a chronic respiratory disorder.
>  (V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C. § 7384l(13)(B).

Based on the totality of medical evidence, FAB determined that 42 U.S.C. § 7384l(13)(B) applied to Scott's claim. (AR 13). There is no dispute this is the applicable standard. Moreover, there is no dispute that Scott's husband satisfies the occupational history requirement. FAB determined that Scott's husband worked at the PGDP, a facility where the potential for beryllium exposure existed, and presumed beryllium exposure. (AR 12-14). The crux of FAB's decision was that Scott failed to establish three of the five criteria listed in 42 U.S.C. § 7384l(13)(B)(ii)(I)-(V). FAB reviewed the medical evidence of record, which included chest x-ray reports, a pulmonary function test indicating obstructive lung disease, and reports dated August 1991 through 2007 indicating that Scott's husband had received ongoing treatment for COPD. FAB found that only two of the required criteria were established: restrictive or obstructive lung physiology testing (Criterion II) and a clinical course consistent with chronic respiratory disorder (Criterion IV). (AR 14).

Scott argues that the medical evidence shows that Criterion I is also met and that FAB acted arbitrarily and capriciously in concluding otherwise. The Sixth Circuit's analysis in *Freeman v. Department of Labor*, 653 F. App'x 405 (6th Cir. 2016), however, contradicts Scott's position. Similar to the plaintiff in *Freeman*, Scott relies too heavily on the fact that her

husband's chest x-rays showed chronic fibrosis, scattered granulomas, and patchy opacities. Those findings are not dispositive. *See Bradford v. Dep't of Labor*, No. 5:14-CV-00135-GNS-LLK, 2016 WL 3945802, at *4 (W.D. Ky. July 18, 2016). As FAB explained in its April 2013 decision, according to the EEOICPA procedural manual, "abnormalities indicative of CBD are chest x-rays showing . . . alveolar patterns (e.g. consolidation, ground glass), interstitial patterns (e.g. irregular lines, diffuse nodules, reticulonodular) or interstitial fibrosis (e.g. honeycombing and upper lode retraction." (AR 291). Pleural fibrosis and opacities alone are not enough to support a CBD claim, and not all granulomas are characteristic of CBD. (AR 289). Moreover, as noted above, a medical expert later reviewed the x-rays and specifically found that "Mr. Walter Scott's x-ray reports do not show characteristics consistent with [CBD]." (AR 181). Scott is essentially asking the Court to reinterpret the medical evidence despite the medical consultant's opinion and FAB's reliance on that opinion. This the Court cannot do. *Freeman*, 653 F. App'x at 410 (6th Cir. 2016) (citations omitted); *see also McAlister v. Liberty Life Assurance Co. of Boston*, 647 F. App'x 539, 548-49 (6th Cir. 2016) ("[W]e are not medical specialists and that judgment is not ours to make." (citation omitted)); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (noting that under arbitrary and capricious review, "a court is not to substitute its judgment for that of the agency.").

Scott's contention that FAB acted improperly in relying on the medical consultant in rendering its decision is without merit. As this Court noted in *Bradford*, the procedure manual Scott cites as contradictory to the consultant's opinion does not dictate that the results of her husband's x-rays equate to automatic satisfaction of Criterion I. *See Bradford*, 2016 WL 3945802 at *4. In fact, the manual lends support to FAB's decision. *See* Federal (EEOICPA)

Procedure Manual, ch. 2-1000.6(a)-(c). Furthermore, this Court and the Sixth Circuit have approved the referral of certain matters to independent medical professionals for review and interpretation. *See, e.g.*, *Bradford*, 2016 WL 3945802 at \*4; *Featherston v. Dep't of Labor*, No. 5:14-CV-00132-GNS-LLK, 2016 WL 4746211, at \*4 (W.D. Ky. Sept. 12, 2016); *Freeman*, 653 F. App'x at 411 n.2 ("We do not find persuasive Freeman's argument . . . that the DOL 'improperly' relied on the opinions of the District Medical Consultants because the medical records clearly met the statutory criteria . . . ."). Additionally, 20 C.F.R. § 30.410(a) provides that OWCP may send a case file to a medical professional selected by DOL for review when the agency deems such review necessary.

DOL was principled in sending the x-rays to a medical consultant. As the Unit Chief for Policies, Regulations, and Procedures noted in his decision granting Scott's request to reopen, the district office previously implied that the x-rays were not characteristic of CBD, which led to the denial of her claim. (AR 211). However, "EEOICPA guidance at Chapter 2-800.4a(2) of the Procedure Manual stipulates that in cases where insufficient medical interpretation is provided, the CE must seek clarification either from the source of the report, or a CMC referral, as appropriate. [C]laims examiners are not to interpret medical/diagnostic tests." (AR 211). Because the x-rays submitted by Scott had not been reviewed by a physician to determine if they were characteristic of CBD, Scott's claims were reopened and submitted to a medical consultant for review at the Unit Chief's behest. (AR 9, 211). Unfortunately for Scott, the consultant's opinion did not support her claim.

Overall, FAB's final decision denying Scott's claim for survivor benefits under Part B was based on a "consideration of relevant factors" and there was no "clear error judgment." *Ky. Waterways All.*, 540 F.3d at 473 (quoting *Marsh*, 490 U.S. at 378). Indeed, it appears the agency

gave Scott every opportunity to succeed on her claim—it reopened a final decision so a medical expert could review the x-rays she submitted and held multiple hearings.  Scott was simply unable to provide evidence showing that three of the five criteria listed in listed in 42 U.S.C. § 7384l(13)(B)(ii)(I)-(V) were met.  Under the circumstances, FBA's decision was not arbitrary or capricious.  *Freeman*, 653 F. App'x at 411; *see also Watson v. Solis*, 693 F.3d 620, 626 (6th Cir. 2012) (where the claimant fails to provide evidence that is required under the Act, the DOL does not act arbitrarily or capriciously).

**B.    Part E Claims**

**1.    *Standard of Review***

Unlike EEOICPA Part B, the Act does contain a provision allowing for judicial review of final decisions under Part E.  The standard of review for actions seeking review of final decisions under part E is codified in 42 U.S.C. § 7385s-6(a).  As set forth in the Act:

> A person adversely affected by a final decision of the Secretary under [Part E] may review that order in the [proper] United States district court . . . by filing in such court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. . . . Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision. . . . The court may modify or set aside such decision ***only if*** the court determines that such decision was arbitrary ***and*** capricious.

42 U.S.C. § 7385s-6(a) (emphasis added).  Because Scott filed her Complaint on October 17, 2014, within 60 days after the final decision on September 15, 2014, her claim is not time-barred.[1]

---

[1] Under 42 U.S.C. § 7385s-6(a), a claimant may seek review in district court of a final decision on a claim under Part E within 60 days of the date on which the final decision was issued.  Judicial review of any other final decision denying Scott's various Part E claims is time-barred under 42 U.S.C. § 7385s-6(a) because no request for review of such a decision was filed with the Court within the strict 60-day time limit.  This Court has ruled that compliance with the 60-day filing deadline in 42 U.S.C. § 7385s-6(a) is a jurisdictional prerequisite for judicial review of

After reviewing conflicting authority, Magistrate Judge Lanny King determined in a discovery ruling that the "arbitrary and capricious standard specified in EEOICPA Part E removes claims under that part from the APA's standard." (Order Den. Pl.'s Mot. Disc. 4, DN 14). Nevertheless, Magistrate Judge King recognized that "the similarity of the EEOICPA standard and the APA standard justifies the court's use of APA precedent to guide its Part E rulings. (Order Den. Pl.'s Mot. Disc. 4). In *Watson*, however, the Sixth Circuit's analysis of why DOL did not act arbitrarily and capriciously in denying a Part E claim suggests that the standard mirrors that of the APA. *See Watson*, 693 F.3d at 623-24, 626 (citing *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009)). Indeed, in *Freeman*, the Sixth Circuit cited *Watson* as supporting the conclusion that DOL's denial of a Part B claim was not arbitrary or capricious under the APA. *Freeman*, 653 F. App'x at 411 (citing *Watson*, 693 F.3d at 626). This appears to be a distinction without a difference.

### 2. *DOL's Decision was neither Arbitrary nor Capricious*

Part E of the Act provides additional compensation to certain DOE contractor employees for permanent impairment and/or wage-loss due to a "covered" illness resulting from work-related exposure to toxic substances at a DOE facility. 42 U.S.C. § 7385s. A survivor can recover survivor benefits under Part E only if:

> (A) [T]he employee would have been entitled to compensation under section 7385s-4 for a covered illness; ***and***

> (B) [I]t is at least as likely as not that exposure to a toxic substance at a [DOE] facility was a significant factor in aggravating, contributing to, or causing the death of such employee.

---

DOL's final decisions denying claims under Part E of EEOICPA. *Lanier v. Dep't of Labor*, No. 5:14-CV-168-GNS, 2015 WL 1638495, at *2-3 (W.D. Ky. Apr. 13, 2015); *Jeffords v. Dep't of Labor*, No. 5:14-CV-000165-GNS-LLK, 2016 WL 2745865, at *2 (W.D. Ky. May 11, 2016); *Todd v. Dep't of Labor*, No. 5:14-CV-00164-GNS-LLK, 2016 WL 2853570, at *2-3 (W.D. Ky. May 13, 2016).

42 U.S.C. § 7385s-3(a)(1)(A)-(B) (emphasis added). When deciding Part E claims, DOL must find that a DOE contactor employee has a covered illness for purposes of Part E if it has already determined that the employee is entitled to compensation under Part B for the same illness, including CBD. 42 U.S.C. § 7385s-4(a). In the absence of a prior determination under Part B, a positive beryllium lymphocyte proliferation test ("BeLPT") and a rationalized medical report including an explicit diagnosis of CBD from a qualified physician is required to establish CBD under Part E. Chapter 2-1000.9b, Federal (EEOICPA) Procedural Manual 14 (April 2013).[2] The rationalized report should contain an "evaluation of the employee's medical condition and a finding that it is 'at least as likely as not' that exposure to beryllium at a DOE covered facility was a significant factor in aggravating, contributing to, or causing the CBD." *Id.*

As stated above, FAB's decision determining that CBD was not established under Part B was neither arbitrary nor capricious. Therefore, Scott was required to submit a positive BeLPT and a rationalized medical report to succeed on her Part E claim. She submitted neither and FAB denied her claim. That decision was not arbitrary or capricious. *Freeman*, 653 F. App'x at 411; *see also Watson*, 693 F.3d at 626 (6th Cir. 2012) (where the claimant fails to provide evidence that is required under the Act, the DOL does not act arbitrarily or capriciously). Therefore, the Part E claim was properly denied.

---

[2] The relevant version of Chapter 2-1000, issued in April 2013, is available online at: https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/ unifiedpm/Unifiedpm_transmittals/Transmittal_13-04.pdf.

IV.   **CONCLUSION**

Scott failed to establish the statutory criteria for a diagnosis of CBD.   FAB's decision

denying her EEOICPA Part B and E claims was logical and based on record evidence and thus

was not arbitrary or capricious.   Therefore, this case must be **DISMISSED**.

**Greg N. Stivers, Judge**
**United States District Court**

December 12, 2016

cc:      counsel of record